IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LILA DHAR GAUTAM,

        Plaintiff,

            v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

25cv0197

ELECTRONICALLY FILED

**MEMORANDUM OPINION ON PLAINTIFF LILA DHAR GAUTAM'S
MOTION FOR SUMMARY JUDGMENT (Doc. 8) AND DEFENDANT
COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION'S MOTION FOR
SUMMARY JUDGMENT (Doc. 15)**

**February 18, 2026**

## I.   INTRODUCTION

Lila Dhar Gautam ("Plaintiff" or "Claimant") filed an appeal pursuant to 42 U.S.C.

§ 405(g) and 1383(c)(3), seeking review of the final determination of the Commissioner of

Social Security ("Commissioner") denying his application pursuant to the Social Security Act

("Act") for Social Security Disability Insurance benefits for lack of disability.  (Doc. 3).

On April 7, 2025, Defendant filed the record developed at the administrative proceedings

(Doc. 4).  On July 7, 2025, Plaintiff submitted a Motion for Summary Judgment and supporting

Brief.  (Doc. 8, Doc. 9). On August 6, 2025, Defendant submitted a Brief In Opposition to

Plaintiff's Motion for Summary Judgment ("Defendant's Opposition Brief").  (Doc. 10). On

August 20, 2025, Plaintiff filed a Reply Brief.  (Doc. 11). On January 26, 2026, Defendant filed

his Motion for Summary Judgment, and incorporated by reference therein the previously filed Defendant's Opposition Brief. (Doc. 15).

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the motions and briefs of the parties, and the entire record, the Court finds that the ALJ did not err as asserted by the Plaintiff and substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Act. The Court, therefore, will deny Plaintiff's motion for summary judgment, grant Defendant's motion for summary judgement, and enter judgment in favor of the Commissioner.

## II.    PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits ("DIB") on March 1, 2022, alleging a disability onset date of August 31, 2021. (Doc. 4 - hereinafter "Tr." 70). Plaintiff's claim was denied at the initial and reconsideration levels of administrative review. (Tr. 91-94, 97-100).

Plaintiff, who was represented by an Appointed Representative (Non-Attorney), then requested a hearing before an ALJ, and a hearing (conducted via telephone with Plaintiff's consent) was held on April 9, 2024, during which Plaintiff, represented by an attorney, testified with the assistance of a Nepali interpreter. (Tr. 16). A vocational expert (VE) also testified. (*Id.*).

On May 1, 2024, the ALJ issued her decision in which she concluded Plaintiff was not under a disability within the meaning of the Social Security Act from August 31, 2021 through the date Plaintiff was last insured, June 30, 2023. (Tr. 16-29).

Plaintiff filed a request for review, which was denied by the Appeals Council, making the decision of the ALJ the final ruling of the Commissioner.  (Tr. 1).

On February 13, 2025, Plaintiff filed a Complaint in this Court, seeking judicial review of the Commissioner's final decision denying benefits.  (Doc. 3).  Following motions and briefing thereon, this matter is now ripe for review.

## III.    STATEMENT OF THE CASE

### A. The Relevant ALJ Findings and Determination

In issuing her decision that Plaintiff was not under a disability within the meaning of the Social Security Act from August 31, 2021, through the date Plaintiff was last insured, June 30, 2023, the ALJ made the following specific findings:

1.  The claimant last met the insured status requirements of the Social Security Act on June 30, 2023.

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 31, 2021 through his date last insured of June 30, 2023 (20 CFR 404.1571 et seq.).

3.  Through the date last insured, the claimant had the following severe impairment(s): osteoarthritis (20 CFR 404.1520(c)).

* * *

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

* * *

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) (e.g., lifting up to 50 pounds occ. and 25 pounds freq.; standing and walking for about 6 hrs.; and sitting for about 6 hrs. in an 8-hr. workday with normal breaks) except that he:

• could have frequently climbed ramps and stairs;
• could have occasionally climbed ladders, ropes, and scaffolds;
• could have frequently performed all other "posturals" (balancing, stooping, kneeling, crouching, and crawling); and
• needed to avoid concentrated exposure to extreme cold and vibration(s)

\* \* \*

6.  Through the date last insured, the claimant was capable of performing past relevant work as a home health aide and laundry worker. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

\* \* \*

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from August 31, 2021, the alleged onset date, through June 30, 2023, the date last insured (20 CFR 404.1520(f)).

(Tr. at p. 16-29).

**B. Additional Information**

In Plaintiff's Brief in support of his Motion for Summary Judgment, Plaintiff argues that the ALJ erred as follows and thus, the ALJ's unfavorable decision is not based on substantial evidence and the case should be remanded for further administrative proceedings including a *de novo* hearing and a new decision:

1.  The ALJ violated agency regulations by failing to properly consider and explain his rejection of balance restrictions assessed by Melissa Walls, N.P., who performed the agency's consultative evaluation.

2.  The ALJ failed to provide sufficient reasons for rejecting Plaintiff's subjective allegations that he cannot stand for longer than five to six minutes and that he cannot lift or carry greater than five pounds.

(Doc. 9 at 1).

4

To the contrary, Defendant asserts that the ALJ did not err as asserted by Plaintiff, and "that, pursuant to 42 U.S.C. § 405(g), the ALJ's conclusion that Gautam was not disabled is supported by substantial evidence." (Doc. 10 at 12).

## IV.   STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. The Court reviews an ALJ's findings of fact for "substantial evidence," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)), and the Court has plenary review with respect to legal questions. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

---

[1] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2] Section 1383(c)(3) provides in pertinent part:

> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

42 U.S.C. § 1383(c)(3).

### A. *Substantial Evidence*

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993) (quotin*g Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87.") (parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart v. Sec'y HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

### B. Five Step Determination Process

In order to qualify for DIB or SSI benefits, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and entitled to either DIB or SSI benefits, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999):

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. *See, Podedworny v. Harris,* 745 F.2d 210, 218 (3d Cir.1984).

*Plummer*, 186 F.3d at 428. *See also Rutherford*, 399 F.3d at 551 (explaining: "In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to

return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered *per se* disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Further:

When "mental impairments are at issue, additional inquiries are layered on top of the basic five-step disability analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019). The regulations set forth a "special technique" used for evaluating mental impairments. *See* 20 C.F. R. §§ 404.1520a, 416.920a. As part of that "special technique," a claimant's degree of functional limitation is rated in four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 404.1520a(c)(3), 416.920a(c)(3). A claimant's degree of limitation in these functional areas is rated using "the following five-point scale: None, mild, moderate, marked, and extreme." *Id.* at §§ 404.1520a(c)(4), 416.920a(c)(4). The ratings in these four broad functional areas are used at step 2 to determine if the claimant has a severe mental impairment, and if the claimant has a severe mental impairment, the ratings are also used at step 3 to determine if the claimant's severe mental impairment meets or equals a listed mental disorder. *Id.* at §§ 404.1520a(d), 416.920a(d).

*Walizer v. Dudek*, Civ. No. 24-25, 2025 WL 964259, at *4 (M.D. Pa. Mar. 31, 2025).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways: (1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment; or (2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Heckler v. Campbell*, 461 U.S. 458, 460-461 (1983) (*citing* 42 U.S.C. § 423 (d)(2)(A));

*Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3)).  In order to prove disability

under this second method, plaintiff must first demonstrate the existence of a medically

determinable disability that precludes him or her from returning to his or her former job (Steps

1-2, 4).  *Stunkard,* 841 F.2d  at 59; *Kangas*, 823 F.2d at 777.  Then, the claimant having shown

that he or she is unable to resume his or her previous employment, the burden shifts to the

Commissioner (Step 5) to prove that, given plaintiff's mental and/or physical limitations, age,

education and work experience, he or she is able to perform substantial gainful activity in jobs

available in the national economy.  *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203,

205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

> Moreover, the Commissioner/ALJ;

>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and]
>> must provide some explanation for a rejection of probative evidence which
>> would suggest a contrary disposition. . . . The [Commissioner] may properly
>> accept some parts of the medical evidence and reject other parts, but she must
>> *consider* all the evidence and *give some reason for discounting* the evidence she
>> rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

### C. *Multiple Impairments*

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'") (*citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the Regulations, titled "Multiple impairments," provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (*see* § 404.1520).

20 C.F.R. § 404.1523.

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) (citation omitted). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and

*specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli,* 247 F.3d at 40 n. 4 (citing *Burnett*, 220 F.3d at 119-20).

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d at 36.

### D. *Claimant's Subjective Complaints of Impairments and Pain*

As explained by the court in *Schneider v. Berryhill*, Civ. No. 17-1299, 2019 WL 698471, (W.D. Pa. Feb. 20, 2019):

> SSR 16-3p went into effect on March 28, 2016. SSR 16-3p supersedes SSR 96-7p, the previous rule governing the evaluation of subjective symptoms. *See*, SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 16-3p removes the term "credibility," clarifying that the subjective symptom evaluation is not an examination of an individual's character but rather an ALJ is to "consider all of the evidence in an individual's record . . . to determine how symptoms limit ability to perform work-related activities." *Id.* at *2. In so doing, an ALJ is to use a two-step process. *Id.* at *2-33. Thus, after an ALJ finds "that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms", the ALJ shall then consider all of the evidence in the record when he/she evaluates the intensity and persistence of symptoms to determine how "symptoms limit [the] ability to perform work-related activities." *Id*. In this regard, and to the extent relevant and available, the ALJ should consider objective medical evidence; individual statements; other medical sources; non-medical sources; the factors set forth in 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3) including daily activities; the location, duration, frequency and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; treatment other than medication an individual receives or has received for relief of pain or other symptoms; any measures other than treatment used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4-7.

*Schneider*, 2019 WL 698471, at *2.  *See also Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir.1993) (determining: "An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence.").

### E. *20 C.F.R. § 404.1520c*

20 C.F.R. § 404.1520c addresses how the Commissioner/ALJ is to "consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c.

In *Lynch v. Commr. Soc. Sec*., No. 23-1982, 2024 WL 2237961 (3d Cir. May 17, 2024), the United States Court of Appeals for the Third Circuit succinctly explained:

> Under regulations effective for claims filed after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinion evidence and prior administrative medical findings based on five factors. *See* 20 C.F.R. § 404.1520c. The factors include: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) other factors. *Id*.[3]
>
> The two most important factors are supportability and consistency. *Id*. § 404.1520c(b)(2). Supportability is the extent to which a medical opinion uses relevant "objective medical evidence and supporting explanations." *Id*. § 404.1520c(c)(1). Consistency looks to how the medical opinion accords with the other medical and nonmedical sources on record. *Id*. § 404.1520c(c)(2). An ALJ must articulate how he or she considered both supportability and consistency when making a determination of persuasiveness for each medical opinion source. *Id*. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how the other three factors weigh into a decision of persuasiveness. *Id*.
>
> In assessing the ALJ's decision, the report, "read as a whole," must "illustrate[ ] that the ALJ considered the appropriate factors in reaching the conclusion[s]." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The depth of explanation required is not extensive so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Id*. An ALJ is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

> [footnote 3: Prior to 2017, treating source opinions were given controlling weight. *See Cotter*, 642 F.2d at 704.]

*Lynch*, 2024 WL 2237961, at *2.

## V. DISCUSSION

### A. When rejecting the balance restrictions assessed by Melissa Walls, N.P., the ALJ did not violate 20 C.F.R. § 404.1520c

In his brief in support of his motion for summary judgment, Plaintiff first argues that "the ALJ violated the regulations by failing to properly explain his [sic.] consideration of all the factors of supportability and consistency in rejecting the lifting, standing and walking limitations assessed by NP Walls." Plaintiff's argument explains that N.P. Walls, who performed the agency's consultative evaluation, limited Plaintiff to no more than frequent lifting of more than ten pounds, no more than occasional lifting of more than twenty pounds, and that Plaintiff never attempt to lift more than fifty pounds. T 427. N.P. Walls also limited Plaintiff's standing and walking to no more than two hours without interruption, and she limited his standing and walking to no more than four hours total throughout the course of an 8-hour work day. T 428.

Deviating from what N.P. Walls recommended, the ALJ's RFC indicated that Plaintiff could lift up to fifty pounds occasionally and twenty pounds frequently, with standing and walking limited to no more than six hours, and sitting limited to six hours in an 8-hour workday with normal breaks. T 22.

In reaching her conclusion, the ALJ explained her decision as follows:

> The undersigned does not find [N.P. Walls'] opinion persuasive because it is inconsistent with the record as a whole and because it is without substantial support from explanation and/or relevant evidence *(please see preceding paragraphs)*. As Dr. Guie noted, the assessed limitations "do not correlate with a basically normal exam." (Exhibit 4A/7). The undersigned finds that the claimant is less limited relative to exertion in light of limited treatment and examinations documenting no evident joint deformities; normal range of motion; no acute distress; abilities to walk on the heels and toes, and rise from a chair without difficulties; negative straight leg raising both seated and supine; physiologic and equal deep tendon reflexes; and normal gait (see, Exhibits 1F, 2F, 3F, and 6F). Overall, the assessed environmental and noise

limitations are inconsistent with the record as a whole and/or are not fully supported by explanation or relevant evidence.

T 25.

As noted, the ALJ referred the Parties to the "preceding paragraphs" in support of her conclusion that N.P. Walls' opinion was inconsistent with the record as a whole, and because N.P. Walls' opinions were without substantial support and/or relevant explanation. The relevant portions of the three pages preceding the above-quoted conclusion include, *inter alia*:

> In terms of the alleged physical impairment(s), there is evidence in the record of osteoarthritis. Lumbosacral spine x-rays from December 2022 showed chronic partial T12 compression fracture; severe degenerative change at the T11-12 level; and mild degenerative change at the T12-L5 levels (Exhibit 3F/19). Left ankle x-rays showed plantar and retrocalcaneal spurs; no evidence of acute fracture, dislocation, or destructive bony lesion; and relatively well maintained joint spaces (Exhibit 3F/20). Right knee x-rays were unremarkable (Exhibit 3F/21). At times, examinations documented back and knee decreased range of motion and tenderness; reduced squat (30%); 4/5 strength; and "slightly" unsteady tandem walk. However, examinations also documented no evident joint deformities; normal range of motion; no acute distress; regular heart rate and rhythm; normal breath sounds; ability to walk on toes and rise from a chair without difficulties; negative straight leg raising both seethed and supine; physiologic and equal deep tendon reflexes; intact hand and finger dexterity . . . and normal gait . . . . The record indicates that the claimant received conservative treatment during the relevant period that included medications such as Cymbalta, Mobic, and Motrin.
>
> While claimant stated that he needed a cane and/or walker to ambulate, medical records failed to document same. Rather, examinations generally documented normal gait and station . . . . [T]he medical evidence does not support the medical need for an assistive device. The undersigned therefore did not include such limitation in the residual functional capacity . . . .
>
> Based on the above findings, the claimant appears to have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms existed, but whether those symptoms occurred with such frequency, duration, or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, the objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in symptoms of such a severity or frequency as to preclude the range of work described above. Rather, the above findings support the residual functional capacity that has been determined in this decision.

T. 23 - 24.

Despite the ALJ's thorough explanation quoted above, Plaintiff claims that the ALJ "failed to satisfactorily explain why [she] declined to adopt the limitations asserted by NP Walls." ECF 9, p. 9. Given the select, quoted sections of the ALJ's written opinion (immediately above), this Court finds that the ALJ more than adequately explained her reasons for not adopting N.P. Walls' more stringent limitations. The objective medical evidence of record (*i.e.*, the x-rays) depicted some degenerative change and spurs but also demonstrated no evidence of fracture, dislocation, bony lesions and well-maintained joint spaces. The physical examinations demonstrated some decrease in Plaintiff's range of motion in his back and knee and his slightly unsteady tandem, but other examinations also produced normal ranges of motion, no acute distress, Plaintiff's ability to walk on toes and rise from a chair without difficulties, and a normal gait. Thus, based on this evidence and all other medical and nonmedical evidence the ALJ considered, the ALJ found N.P. Walls' opinion with respect to more stringent limitations to be unpersuasive.

The Court further finds that Plaintiff's argument that the ALJ's "decision does not adequately articulate how the ALJ's consideration of the factors of supportability and consistency led the ALJ to reject the restrictions assessed by NP Walls, as required by 20 C.F.R. § 404.1520c(b)(2)[,]" is equally without merit.

Title 20 C.F.R. § 404.1520c reads in relevant part:

(b) How we articulate our consideration of medical opinions and prior administrative medical findings. We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows:

* * *

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we

determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

       \*        \*        \*

(c) Factors. We will consider the following factors when we consider the medical opinion(s) and prior administrative medical finding(s) in your case:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

Plaintiff contends that "[w]ith regard to the factor of supportability," the ALJ inaccurately stated "that Dr. Guie viewed the CE findings as reflective of a 'basically normal exam.'" T 25. Plaintiff further argues that, "NP Walls noted that Plaintiff described a history of knee pain, which was diagnosed as arthritis. T 422. She recorded Plaintiff's description of 'cramping internal knee pain' rated as a 7/10 at rest, and NP Walls observed that Plaintiff's tandem walk was 'slightly unsteady'." T 424.

However, as noted above by the direct quotation from the ALJ's Decision, the ALJ **did** acknowledge and consider those very factors and symptoms, but nevertheless found in her final

decision (based in part on Dr. Guie's assessments[3]) that Plaintiff was, in fact, incapacitated to a lesser degree than what N.P. Walls suggested.

In *Lynch v. Commr. Soc. Sec*., No. 23-1982, 2024 WL 2237961 (3d Cir. May 17, 2024), the United States Court of Appeals for the Third Circuit succinctly explained:

> Under regulations effective for claims filed after March 27, 2017, an ALJ must evaluate the persuasiveness of all medical opinion evidence and prior administrative medical findings based on five factors. *See* 20 C.F.R. § 404.1520c. The factors include: 1) supportability, 2) consistency, 3) relationship with the claimant, 4) specialization, and 5) other factors. *Id*.[3]

> The two most important factors are supportability and consistency. *Id*. § 404.1520c(b)(2). Supportability is the extent to which a medical opinion uses relevant "objective medical evidence and supporting explanations." *Id*. § 404.1520c(c)(1). Consistency looks to how the medical opinion accords with the other medical and nonmedical sources on record. *Id*. § 404.1520c(c)(2). An ALJ must articulate how he or she considered both supportability and consistency when making a determination of persuasiveness for each medical opinion source. *Id*. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how the other three factors weigh into a decision of persuasiveness. *Id*.

> In assessing the ALJ's decision, the report, "read as a whole," must "illustrate[ ] that the ALJ considered the appropriate factors in reaching the conclusion[s]." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The depth of explanation required is not extensive so long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Id*. An ALJ is "free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014).

---

3 For example, other evidence is found elsewhere in the ALJ's findings which noted:

> Medical records reference chronic pain syndrome; however, the medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on the claimant's ability to work. The condition was being managed medically and amenable to proper control by adherence to recommended medical management and medication compliance (see also, Exhibit 2F/43 indicating the claimant was prescribed Meloxicam and Cymbalta but did not start taking it as prescribed). Consistently, examinations generally documented no distress upon examination (see e.g., Exhibits 2F/22; 3F/5; 6F/58). The undersigned therefore finds that it is nonsevere.

TR. 19.

[footnote 3: Prior to 2017, treating source opinions were given controlling weight. *See Cotter,* 642 F.2d at 704.]

*Lynch*, 2024 WL 2237961, at *2.

Contrary to Plaintiff's position, the Court finds that the ALJ sufficiently explained her consideration of the factors of supportability and consistency in rejecting the lifting, standing and walking limitations assessed by N.P. Walls. Thus, she complied with, and did not violate, the regulations that require the ALJ to evaluate the persuasiveness of all medical opinion evidence and prior administrative medical findings based on the above-listed five factors, and specifically articulated, when making a determination of persuasiveness for each medical opinion source, how she considered both supportability and consistency. (*Id.*); 20 C.F.R. § 404.1520c.

Based on the above facts and law, the Court finds that the ALJ's decision rejecting N.P. Wells' opinion related to Plaintiff's balance restrictions, to be both supportable by, and consistent with, the evidence of record -- especially when taken as a whole.

### B. The ALJ provided sufficient reasons for rejecting Plaintiff's subjective allegations that he cannot stand for longer than five to six minutes and that he cannot lift or carry greater than five pounds.

As to Plaintiff's second argument, Plaintiff specifically contends:

. . . [T]he ALJ found that Plaintiff has the ability to perform a reduced range of light work, but [she] declined to include a limitation to standing for no longer than five to six minutes, and [she] chose not to incorporate an inability to lift or carry greater than five pounds, as described in Plaintiff's testimony. T 22, 38-40. In discounting of Plaintiff's subjective complaints, the ALJ stated as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

T 23. The ALJ followed this paragraph with medical summaries; however, the discussion does not point to any genuine inconsistencies between Plaintiff's testimony and the record. T 23-27. 20 C.F.R. § 404.1529(c)(4) provides that the ALJ must "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the allegations] and the rest of the evidence." The ALJ failed to comply with this regulation. T 23. The ALJ summarized the medical evidence, but [she] provided no logical bridge between the evidence and the discrediting of Plaintiff's subjective allegations. T 23-27.

*      *      *

The ALJ's decision in the case at bar fails to comply with 20 C.F.R. § 404.1529(c)(4) by failing to point to any genuine inconsistencies between the testimony and the other evidence. T 23-27.

(Doc. 9 at 11-14).

Relatedly, Plaintiff also contends that this legal error by the ALJ is not harmless because:

When asked to assume the restrictions which the ALJ ultimately adopted and included in the RFC, and to further consider the need to alternate between standing and sitting, the VE clarified that—if the transition time from sitting to standing exceeds more than six minutes per hour, resulting in the worker being off task more than 10% of the workday—such an individual would not be able to perform the jobs. T 49-50. While this hypothetical does not precisely parallel Plaintiff's testimony about his difficulties with standing and ambulation, it certainly suggests that omissions from the RFC were prejudicial here. T 23- 27, 38-40, 47-50.

(*Id.* at 14).

In opposition to these arguments, and in support of its overall position "that, pursuant to

42 U.S.C. § 405(g), the ALJ's conclusion that Gautam was not disabled is supported by

substantial evidence," (Doc. 10 at 12), Defendant posits:

Gautam's final argument that the ALJ failed to assess any "genuine" inconsistencies between the record evidence and Gautam's testimony that he can stand no longer than five minutes and lift/carry no greater than five pounds (Pl.'s Br. at 12-13), is also without merit. As noted above, the ALJ discussed that through Gautam's date last insured, Gautam had at times some slight reduction in findings on examination; however, examinations also documented findings contrary to slight reductions (Tr. 23-24, citing Exhs. 1F, 2F, 3F, 6F, specifying no evident joint deformities; normal range of motion; no acute distress; regular heart rate and rhythm; normal breath sounds; abilities to walk on the heels and toes, and rise from a chair without difficulties; negative straight leg raising both seated and supine; physiologic and equal deep tendon reflexes; intact hand and finger dexterity (able with both hands to zip, button, tie, pinch, grasp, and manipulate objects); and

normal gait with no documented need for an assistive device. See 20 C.F.R. § 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"); SSR 16-3p, 2017 WL 5180304, at *5 ("A report of minimal or negative findings or inconsistencies in the objective medical evidence is one of the many factors we must consider . . ."). Thus, Gautam is wrong, because the ALJ explicitly showed several inconsistencies between the record evidence and his testimony.

Additionally, the ALJ discussed other evidence of record, noting that Gautam received conservative treatment during the relevant period that included medications such as Cymbalta, Mobic, and Motrin (Tr. 24). Id., 2016 WL 1119029, at *8 (an ALJ may find a claimant's allegations about his symptoms inconsistent with the evidence where the frequency or extent of the treatment is not comparable to the degree of her subjective complaints). The ALJ also emphasized that she considered Gautam's activities e.g., he was independent in self-care; read; watched television; spent time with others (talked in person and on the phone); attended medical appointments and did "home exercise routine includes household projects," as well as the opinion evidence and Gautam's failure to consistently follow medical advice, e.g., he did not start medication as discussed and prescribed) (Tr. 24, citing Exhs. 9E, 2F, 3F, 4F). See SSR 16-3p, 2016 WL 1119029, at *7 (it is well established that a claimant's level of activity can undercut his subjective complaints); 20 C.F.R. § 404.1529(c)(3)(iv)-(vi) (noting that treatment, and thus, failure to pursue treatment, is a factor that the ALJ can use to evaluate the severity of a claimant' s symptoms).

In accordance with the regulations and policy, the ALJ concluded that "[o]verall, [Gautam]'s longitudinal treatment record and activities are not consistent with his statements about the intensity, persistence, and limiting effects of his symptoms" (Tr. 24). Here, the ALJ's analysis constitutes such relevant evidence as a reasonable mind might accept as adequate to support a finding that Gautam's functional capacity was greater than his allegations of total disability (Tr. 24). See Biestek, 587 U.S. at 103. Accordingly, the Court should find that Gautam's claim of extreme dysfunction in standing, walking, or sitting were reasonably found to be not consistent with the record as a whole.

                          *         *         *

In summary, substantial evidence supports the ALJ's RFC formulation, including the ALJ's evaluation of Gautam's subjective allegations.

(Doc. 10 at 9-11)

In reply to this argument by the Commissioner, Plaintiff asserts:

Rather than concede that the ALJ did not point to genuine inconsistencies, the Commissioner defends the decision and offers additional reasoning that the ALJ did not author. Dkt. No. 10 at 9-11. "[W]hen the record supports differing

conclusions, it is imperative that the ALJ explain how she arrived at her decision." *Martin v Kijakazi*, 2022 WL 11965690 (W.D. Pa. 2022) (citing *Fargnoli v Masanari*, 247 F 3d 34, 44, n. 7 (3rd Cir. 2001) (explaining that an ALJ's decision must be judged according to the analysis provided by the agency and not by resorting to post hoc rationalizations)). The Commissioner's arguments in response to this issue may not properly form the basis for affirmation of this claim. Dkt. No. 10 at 9-11.

(Doc. 11 at 3-4). Plaintiff also reiterates his position, set forth above, as to why this asserted error on the part of the ALJ is not harmless error. (*Id*. at 4).

Plaintiff's argument that the ALJ failed to provide the Parties with specifics as to why she chose one opinion (Dr. Guie's), over another's opinion (N.P. Wells') is a meritless argument. As noted by this Court at page 16, above, where only a portion of the ALJ's decision is quoted, the ALJ made it quite clear that she: (1) reviewed all of the evidence of record, (2) discussed that evidence in great detail, and (3) rejected the findings of N.P. Wells which determined that Plaintiff had balance problems (and his testimony that he could not stand for longer than five to six minutes), nor lift or carry greater than five pounds. Plaintiff's argument in this regard appears to be searching for a direct comparison between Dr. Guie and N.P. Wells' findings and opinions – *i.e.,* some sort of a one-on-one explanation – which is not required by law.

What is required by law is summarized as follows:

The evaluation of the medical opinions, and the RFC determination more generally, must be supported by "a clear and satisfactory" explanation. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (*quoting Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Such an explanation must contain enough detail to permit meaningful judicial review. *See Burnett v. Comm'r of Soc. Sec*., 220 F.3d 112, 119–20 (3d Cir. 2000). Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705. This is especially true when there is "conflicting probative evidence in the record." See *Fargnoli*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, she cannot reject contradictory evidence for "no reason or the wrong reason*." Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999) (*quoting Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the

ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07.

*Michelle R. Q. v. Bisignano*, No. CV 22-4770, 2025 WL 2983156, at *5 (E.D. Pa. Oct. 22, 2025).

The Court finds that the ALJ's decision contained "enough detail" permitting this Court to conduct a meaningful judicial review.  Although this Court does not find the testimony of Dr. Guie and N.P. Wells "conflicting" in some aspects, they did differ on the level of restrictions that needed to be in place. However, the Court finds that the ALJ did not reject N.P. Well's restrictions for "no reason" or "the wrong reason."  To the contrary, this Court finds that the ALJ, after considering the entire record and all of the medical and nonmedical evidence of record, found that the sum total of the evidence weighed against N.P. Well's more stringent restrictions, and in favor of slightly less stringent restrictions. The Court finds this to be an adequate explanation and what is "needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper."[4]

## VI.  CONCLUSION

Having considered Plaintiff's Motion for Summary Judgment and Brief in Support (Doc. 8 and Doc. 9), Defendant's Motion for Summary Judgement and its Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 15 and Doc. 10), Plaintiff's Reply Brief, the ALJ's Decision, the underlying Record, and the applicable law, the Court finds there is substantial evidence in the record to affirm the ALJ's decision that Plaintiff was not disabled from his asserted onset date of August 1,  2021, until the date he was last insured, June 30, 2023. Thus, the Court will therefore deny Plaintiff's Motion for Summary Judgment (Doc. 8) and grant

---

4 Because the Court finds no legal error, it need not consider Plaintiff's "not a harmless error" argument.

Defendant's Motion for Summary Judgment (Doc. 15), and enter Judgment in favor of Defendant.

An appropriate Order and Judgment will follow.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties